IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES WANNER,<br><br>    Plaintiff,<br><br>vs.<br><br>HORMEL FOODS, INC. and<br>UNITED FOOD & COMMERCIAL<br>WORKERS LOCAL UNION NO. 293,<br><br>    Defendants. | 8:15-CV-278<br><br>MEMORANDUM AND ORDER |

The defendant United Food & Commercial Workers Local Union No. 293 has moved to dismiss (filing 9) three causes of action in the plaintiff's complaint. For the reasons explained below, the Court will grant this motion.

BACKGROUND

The plaintiff's allegations are briefly summarized as follows. The plaintiff, James Wanner, is a Nebraska resident who is 54 years old and Caucasian. Filing 1-1 at 3. He was an employee of defendant Hormel Foods, Inc. Filing 1-1 at 1. The plaintiff worked at Hormel's facility in Fremont, Nebraska, filing 1-1 at 1, and he alleges that his job performance was satisfactory, filing 1-1 at 5. Additionally, he was a member of United Food & Commercial Workers Local Union No. 293 ("the Union") at all times relevant to this action. Filing 1-1 at 2. And at all times relevant to this action, the Union and Hormel were parties to a Collective Bargaining Agreement (CBA) that set forth terms and conditions of employment for members of the Union who worked at the Fremont facility. Filing 1-1 at 2.

On or about May 1, 2013, the plaintiff "was disciplined for misconduct relating to mislabeling product" at work. Filing 1-1 at 3. As a result, on June 10, 2013, Hormel and the Union entered into a "Last Chance Agreement," wherein they agreed that if the plaintiff received another written notice of discipline within a year, he would be terminated. Filing 1-1 at 3. According to the plaintiff, the CBA between Hormel and the Union did not provide authority for this agreement. Filing 1-1 at 3. Subsequent to the Last Chance Agreement, the plaintiff was demoted from his Labeling position to a Pork Chop Saw Operator position. Filing 1-1 at 4. According to the plaintiff, employees who were female, non-Caucasian, and under the age of 40 also

1

engaged in misconduct relating to mislabeling of products, but were not disciplined, demoted, or subjected to a Last Chance Agreement. Filing 1-1 at 4.

Next, on or about May 8, 2014, the plaintiff was disciplined for "an unsanitary practice of failing to change his gloves after picking up a piece of pork loin from the floor." Filing 1-1 at 4. He refused to sign the written disciplinary notice, and was placed on administrative leave pending an investigation. Filing 1-1 at 4. On May 13, he met with Mike Peck, a supervisor at Hormel, and Jeff Davenport, a steward of the Union. At this meeting, his employment was terminated. Filing 1-1 at 4. At the termination meeting, the plaintiff requested that Davenport file a grievance on his behalf. Filing 1-1 at 4. But Davenport refused. Filing 1-1 at 4. The following day, May 14, the plaintiff met with Daniel Hoppes, the president of the Union, and asked him to file a grievance. Filing 1-1 at 4. Hoppes said that neither he nor the Union could do anything about the termination. Filing 1-1 at 4. A week later, the plaintiff met with Hoppes and Mike Marty, secretary of the Union. Filing 1-1 at 4–5. Again, they refused to file a grievance on the plaintiff's behalf. Filing 1-1 at 5.

The plaintiff alleges that employees who were female, non-Caucasian, and under 40 engaged in misconduct related to unsanitary practices, but they were not disciplined, demoted, or terminated, nor were they denied union representation. Filing 1-1 at 5. According to the plaintiff, Davenport told him that the Union would file grievances on behalf of female employees, non-Caucasian employees, and employees under 40, but not for the plaintiff, because the Union "was afraid of discrimination complaints." Filing 1-1 at 5.

The plaintiff filed suit against both Hormel and the Union, alleging age discrimination, race and national origin discrimination, gender discrimination, wrongful discharge in violation of public policy, intentional infliction of emotional distress, breach of duty of fair representation, and breach of labor contract. Filing 1-1 at 6–11.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as

true a legal conclusion couched as a factual allegation. *Id.* And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678.

DISCUSSION

The Union moves to dismiss three causes of action in the plaintiff's complaint: intentional infliction of emotional distress, filing 10 at 2, breach of duty of fair representation, filing 10 at 4, and breach of labor contract, filing 10 at 6.

(a) <u>Intentional infliction of emotional distress</u>

First, the Union moves to dismiss the plaintiff's intentional infliction of emotional distress claim. Filing 10 at 2. The plaintiff alleges that "Defendants subjected Plaintiff to adverse employment action and created a hostile work environment," and that "Defendants terminated Plaintiff's employment after he complained of the discrimination, harassment, and hostile work environment." Filing 1-1 at 10. He alleges that, as a result, he "suffered severe emotional distress that no reasonable person should be expected to endure." Filing 1-1 at 10. The Union argues that to the extent this claim is asserted against the Union, it is preempted by the duty of fair representation embodied in federal labor law. Filing 10 at 2.

In general, "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 243 (1959). In other words, this type of preemption—called *Garmon* preemption—prevents both federal and state courts from hearing cases based on activity subject to the National Labor Relations Act (NLRA). The Supreme Court held in *Vaca v. Sipes* that *Garmon* preemption does not apply to suits brought to enforce the duty of fair representation. 386 U.S. 171, 183 (1967). Rather, the Court explained that "we cannot assume . . . that Congress, when it enacted N.L.R.A. § 8(b) in 1947, intended to oust the courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative." *Id.*

But although *Garmon* preemption does not apply to fair representation cases, most circuit courts agree that traditional "field" preemption does. *See, Adkins v. Mireles,* 526 F.3d 531, 539 (9th Cir. 2008); *Richardson v. United Steelworkers of America,* 864 F.2d 1162, 1165 (5th Cir. 1989); *Nelson v. Stewart,* 422 F.3d 463, 470 (7th Cir. 2005); *Thomas v. National Association*

3

*of Letter Carriers,* 225 F.3d 1149, 1158 (10th Cir. 2000); *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America,* 132 F.3d 824, 830 (1st Cir. 1997).[1] These circuit courts have concluded that because the duty of fair representation arises from federal law, it "displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative." *Adkins,* 526 F.3d at 539.

Stated another way, where a plaintiff brings a state law tort claim alleging that the Union "breached a duty that arose from its status as [his] exclusive collective bargaining agent under the NLRA," that claim will be preempted by federal law. *See Richardson,* 864 F.2d at 1166–67. So to survive preemption, the state law tort claim must allege that the Union had and breached some duty toward the plaintiff that "exists independently of the NLRA-established collective bargaining relationship." *Id.* at 1167.

Here, the Union notes, this claim does not "appear to implicate the Union Defendant action specifically at all, except to refer to all Defendants in plural." Filing 10 at 3. Thus, to the extent the plaintiff has alleged a claim against the Union for intentional infliction of emotional distress, it must be based on the Union's alleged role in negotiating the Last Chance Agreement, and the Union's alleged refusal to file a grievance on the plaintiff's behalf after he was terminated. Thus, the complaint alleges that the Union has breached duties that arise solely from its obligations under the NLRA—not from some independent state law duty. *Cf. Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 296 (1977) (analyzing whether an intentional infliction of emotional distress claim was *Garmon*-preempted, using similar reasoning). And indeed, the plaintiff seems to have abandoned this claim against the Union—he has not briefed the issue of preemption or otherwise attempted to defend the validity of the claim as to the Union. Consequently, the intentional infliction of emotional distress claim against the Union is preempted, and will be dismissed.

(b) <u>Breach of duty of fair representation</u>

Next, the Union moves to dismiss the plaintiff's breach of duty of fair representation claim against it. Filing 10 at 4. The plaintiff alleges that the Union breached its duty of fair representation to him in "refusing and failing to file a grievance contesting Plaintiff's discharge and discrimination

---

[1] The Eighth Circuit has not yet addressed this issue. *See* Smith v. Nat'l Football League Players Ass'n, No. 4:14CV01559 ERW, 2014 WL 6776306, at *5 (E.D. Mo. Dec. 2, 2014).

4

pursuant to the governing labor contract."[2] Filing 1-1 at 11. The Union argues that this claim is barred by the 6-month statute of limitations. Filing 10 at 4.

A 6-month statute of limitations applies to claims for breach of the duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170 (1983). The limitations period "begins to run when the employee knows or reasonably should know that the union has breached its duty of fair representation." *Becker v. Int'l Bhd. of Teamsters Local 120*, 742 F.3d 330, 333 (8th Cir. 2014) (quoting *Skyberg v. United Food & Commercial Workers Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993)).

Here, as described above, the plaintiff was terminated on May 13, 2014. Filing 1-1 at 4. On that date, he requested that the Union file a grievance on his behalf, and the Union refused. Filing 1-1 at 4. He repeated his request on the 14th, and one more time the following week, and was again denied. Filing 1-1 at 4–5. Accordingly, the plaintiff knew or should reasonably have known that the Union breached its duty of fair representation by May 23, 2014 at the latest. Therefore, he had until November 23, 2014 to file an action. The plaintiff's complaint is dated June 24, 2015—about 7 months after the limitations period had run. *See* filing 1-1 at 13.

The plaintiff argues, however, that the statute of limitations should be tolled.[3] Filing 17 at 3. First, the plaintiff notes that although he did not bring his initial complaint within the limitations period, he did bring an action with the NLRB against the Union on November 13, 2014. Filing 17 at 3. This, he contends, counts as "commencing" an action within the limitations period. Filing 17 at 3. But it is well-settled that the filing of an action with the NLRB will not toll the limitations period for bringing a fair representation claim in state or federal court. *See Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir. 1983).

The plaintiff additionally argues that the date he filed the NLRB charge—and not the date the Union refused to file a grievance—is the date on which he "knew or should have known" that the Union breached its duty of fair representation. Filing 17 at 4. But even if that argument had merit, the plaintiff filed his initial complaint more than 6 months after filing his

---

[2] As the Court understands it, this particular claim is not based on the Union's involvement in negotiating the Last Chance Agreement. Rather, that activity forms the basis for his breach of labor contract claim.

[3] It is somewhat unclear whether the plaintiff's arguments are intended to apply to his breach of labor contract claim alone, or to the breach of duty of fair representation claim as well. Accordingly, the Court has considered all of the plaintiff's arguments to the extent relevant to each claim.

5

NLRB claim, rendering the point moot.

Finally, the plaintiff argues that even if his claim is barred by the statute of limitations, it should be equitably tolled. Filing 17 at 5. "Equitable tolling arises only 'upon some positive misconduct' by defendant to toll the statute of limitations, which is deliberately designed to lead the plaintiff not to bring an action within the permissible time." *Skyberg*, 5 F.3d at 302 (quoting *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358–59 (8th Cir. 1984)). The plaintiff has alleged no facts indicating that the Union took any action to prevent the plaintiff from filing his complaint within the limitations period. Therefore, equitable tolling is inappropriate in this case.

In sum, the plaintiff's claim against the Union for breach of duty of fair representation is barred by the statute of limitations, and will be dismissed.

### (c) Breach of labor contract

Finally, the Union moves to dismiss the plaintiff's claim for breach of labor contract against it. Filing 10 at 6. The plaintiff alleges that "Defendant Hormel's discharge of Plaintiff from his employment was . . . in violation of the governing labor contract," and that "Defendant Hormel and Defendant Local 293's entering into the Last Chance Agreement and binding Plaintiff thereto was . . . in violation of the governing labor contract." Filing 1-1 at 13.

As an initial matter, it is somewhat unclear from the face of the complaint under what law the plaintiff intends to bring this claim: it could plausibly be either a state contract law claim, or a hybrid § 301/fair representation claim. *See* filing 10 at 7. The Union argues that if it is a hybrid claim, it should be dismissed because it is barred by the statute of limitations, and if it is a state law contract claim, it should be dismissed because it is preempted by federal labor law. Filing 10 at 7. Although the plaintiff does not explicitly clarify this point, he treats the claim as a hybrid claim in his briefing. *See* filing 17 at 3. However, the plaintiff asks that if the Court dismisses the hybrid claim, he be granted leave to amend his complaint to bring a state law contract claim against the Union for breach of the CBA and Last Chance Agreement instead. Filing 17 at 6. The Union opposes any such amendment as futile, again arguing that a state law contract claim would be preempted by federal labor law. Filing 18 at 3.

*1. Hybrid claim*

Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), an individual employee may bring suit against his employer for the breach of a CBA. *DelCostello*, 462 U.S. at 163. Before doing so, the employee "is required to attempt to exhaust any grievance or arbitration remedies provided in the [CBA]." *Id.* Normally, the employee will be bound by the result of those grievance/arbitration proceedings, pursuant to the CBA. *Id.* at

6

164. However, if "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee "may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* This is commonly referred to as a "hybrid" § 301/fair representation claim, because the suit against the employer rests on § 301, and the suit against the union is based on its breach of fair representation under the National Labor Relations Act. *See id.* at 165. To state a hybrid claim, the employee must show both that the union breached its duty of fair representation, and that the employer breached the CBA. *Id.*

Like a fair representation claim, a hybrid claim is governed by a 6-month statute of limitations. *DelCostello*, 462 U.S. at 170; *Scott, et. al. v. UAW Union*, 242 F.3d 837, 839 (8th Cir. 2001); *Barlow, et. al. v. American National Can Co., et. al.*, 173 F.3d 640, 642 (8th Cir. 1999). And, as with a fair representation case, for a hybrid case, the statute of limitations begins running when the employee "should reasonably have known of the union's alleged breach." *Scott*, 242 F.3d at 839 (quoting *Evans v. Northwest Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir. 1994)).

Here, the basis of the plaintiff's hybrid claim against the Union is that the Union breached its duty of fair representation by entering into a Last Chance Agreement on his behalf—an action the plaintiff contends was not authorized by the CBA. Filing 1-1 at 13. The Last Chance Agreement, which is attached to the complaint, is dated June 10, 2013, and was signed by the plaintiff on the same day. Filing 1-1 at 26. Thus, the plaintiff had until December 10, 2013 to file a claim on the basis of this alleged breach. As previously noted, the plaintiff filed this action initially on June 24, 2015. That date is well over a year after the limitations period had run.

The plaintiff makes several arguments for extending the limitations period, most of which the Court already addressed in its analysis of the fair representation claim. The Court will not repeat that discussion here. But the plaintiff makes one argument for tolling the statute of limitations that is unique to his hybrid claim. He argues that he was unaware until either March 12, 2015 or April 16, 2015 that the Union had breached the CBA as it related to the Last Chance Agreement, and that therefore, the statute of limitations did not begin to run until one of those dates. Filing 17 at 4. And he has submitted certain evidence in support of this contention. *See* filing 17 at 4.

As an initial matter, the Court must determine the scope of the materials it will consider in resolving this issue. To begin with, when it appears from the face of the complaint that the limitations period has run, a

7

limitations defense may properly be asserted through a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 n.3 (8th Cir. 2014). If, however, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Smith v. Holder*, 806 F. Supp. 2d 59, 62 (D.D.C. 2011); *Morris v. Lowe's Home Centers, Inc.*, No. 1:10-CV-388, 2011 WL 2417046, at *2 (M.D.N.C. June 13, 2011).

Here, the plaintiff has submitted materials that are "outside the pleadings" to support his argument that he was unaware of the Union's breach of duty until March or April 2015. Specifically, he has submitted an affidavit from his lawyer, as well as several documents relating to his NLRB charge. *See* filing 17-1. Consequently, the Court will convert this portion of the motion to dismiss into a motion for partial summary judgment under Rule 56.

In the affidavit, the plaintiff's counsel explains that the plaintiff filed his discrimination charge with the NLRB against the Union for "failure to file a grievance on his behalf against Hormel Foods, Inc." Filing 17-1 at 1. Plaintiff's counsel explains that his charge was dismissed, and the plaintiff's subsequent appeal was denied. Filing 17-1 at 1–2. According to the plaintiff's counsel,

> Based on the NLRB Dismissal and the Appeal Denial, Mr. Wanner and I discovered that there was a new charge against Local Union 293 because it forced Mr. Wanner to sign said Agreement. As a result of this newly discovered information, I conducted research and determined that Last Chance Agreement was invalid. Therefore, on March 12, 2015, I filed a Motion for Reconsideration citing case law precedent invalidating the Last Chance Agreement and requesting a new Charge be filed. . . . On April 6, 2015, the NLRB denied Mr. Warmer's Motion for Reconsideration.

Filing 17-1 at 2.

In other words, the plaintiff contends that the NLRB dismissal and appeal denial revealed to him that he had been forced to sign the Last Chance Agreement. But such a claim is untenable: if the plaintiff were forced to sign the agreement, he knew about it when it happened. And it is irrelevant that the plaintiff's counsel was unaware until March or April 2015 that the Union's actions with respect to the Last Chance Agreement might constitute a breach of the CBA. Whether the plaintiff knew or reasonably

8

should have known of the Union's alleged breach depends on whether he was aware that the Union took the actions that allegedly constitute a breach, and that those actions injured him. *See Barlow,* 173 F.3d at 642 (explaining that a hybrid cause of action "typically accrue[s], for statute of limitations purposes, when the union's breach of duty injures the employee"). He need not know that he had a legal right to seek redress in court. *Cf. United States v. Kubrick,* 444 U.S. 111, 122 (1979) (explaining that, in the context of the Federal Tort Claims Act, the statute of limitations period accrues when a plaintiff discovers his injury and the cause, because a plaintiff "armed with the facts about the harm done to him, can protect himself by seeking advice in the . . . legal community," and "to excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute").

In sum, the plaintiff's hybrid § 301/fair representation claim is barred by the statute of limitations. Consequently, the Court will award partial summary judgment to the Union on this claim.

*2. Preemption*

Next, the plaintiff asks leave to amend his complaint to replace his hybrid and fair representation claims with state law contract claims for the Union's alleged breach of the CBA and Last Chance Agreement. Filing 17 at 6. The Union initially moved to dismiss the breach of labor contract claim on the grounds that to the extent it was based on state contract law it was preempted by § 301 of the Labor Management Relations Act. Filing 10 at 7. It repeats several of those arguments in opposition to the plaintiff's proposed amendments. *See* filing 18 at 6.

Section 301(a) provides, in part, that "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations, may be brought in any district court of the United States." 29 U.S.C. § 185(a). The Supreme Court has held that this statute completely preempts state law claims founded "directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987) (quoting *IBEW v. Hechler,* 481 U.S. 851, 859 n.3 (1987)). In other words, where a state law claim is based on a collective bargaining agreement or is "inextricably intertwined" with the contents of a collective bargaining agreement, the claim is subject to § 301(a) preemption. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985).

Here, a claim brought to enforce provisions of the CBA would obviously be "inextricably intertwined" with the contents of the CBA—this point requires no explanation. With respect to the claim regarding the Last Chance Agreement, it is somewhat unclear from the plaintiff's request how,

9

specifically, the Union is alleged to have breached that agreement. If the substance of the claim is the plaintiff's contention that the Union had no authority under the CBA to enter into the Last Chance Agreement, such a claim would be barred, because it would be "substantially dependent on analysis" of the CBA. But the Court cannot say with certainty at this stage of the proceedings whether the plaintiff might be able to allege some other breach, which would not depend on an interpretation of the CBA. Accordingly, the plaintiff's request will be denied, except to the extent the plaintiff alleges a breach of the Last Chance Agreement that does not depend on interpreting the CBA.

IT IS ORDERED:

1. United Food & Commercial Workers Local Union No. 293's motion to dismiss (filing 9) is granted.

2. The plaintiff's intentional infliction of emotional distress claim is dismissed against the Union.

3. The plaintiff's breach of duty of fair representation claim is dismissed.

4. The Court grants partial summary judgment for the Union with respect to the plaintiff's claim of breach of labor contract.

5. The plaintiff's request for leave to amend his complaint to add two new state law claims is denied in part, and granted in part, as set forth above.

Dated this 31st day of March, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge